IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC KEVIN SECHLER,          :
    Plaintiff,                :
    v.                        :  Case No. 3:22-cv-3-KAP
DAVID THOMAS, *et al.*       :
    Defendants                :

<u>Memorandum Order</u>

The motion at ECF no. 26 is granted: for the reasons explained below, summary judgment is entered for the remaining defendant, David Thomas. The Clerk shall mark this matter closed.

Body cameras with modern high quality video and audio have had a substantial impact on proof in civil rights cases. As early as 2007 the Supreme Court was admonishing lower courts that audiovisual records were so superior to contrary recollections not backed up by physical evidence that a version of events contradicted by a recording is a "visible fiction" that "is so utterly discredited by the record that no reasonable jury could [believe] [it]." <u>Scott v. Harris</u>, 550 U.S. 372, 380–81 (2007).

Plaintiff Eric Sechler claims that David Thomas, a Somerset Borough police officer, violated his civil rights by improperly administering Narcan when he and Somerset Borough police officer Eric Grus responded to Sechler's drug overdose in a motel room in Somerset County on May 30, 2021. Thomas seeks summary judgment on the grounds that there is no evidence that it was him who administered the Narcan.

Since the *annus mirabilis* of 1986 when the Supreme Court explained the modern federal law of summary judgment in <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial. The party bearing the burden of proof at trial can obtain summary judgment by coming forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. The moving party that does not bear the burden of proof at trial can obtain summary judgment by either of two methods. It can:

> produce affirmative evidence ... negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may ... meet its initial burden of production "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 325. This is more than simply denying that the

1

nonmoving party has any evidence, but as in Celotex itself where it was sufficient for defendant Celotex to defend itself against a claim that it was liable for plaintiff Catrett's husband's asbestos-related injuries by directing the district court's attention to Catrett's answers to interrogatories admitting that she had no witnesses who could testify that her husband had been exposed during the statutory period to asbestos manufactured by Celotex and by pointing out the absence of any other evidence of exposure in the materials compiled during discovery, it is sufficient for the moving party to point out the evidentiary gap in the nonmoving party's case.

  I mention the effect of the burden of proof for two reasons, first and most obviously because it is Sechler who bears the burden of proof at trial both that some civil right of his was violated and that it was Thomas who did it. Second, Federal Rule of Evidence 901(a) requires the proponent of a piece of evidence to produce evidence sufficient to support a finding that the item is what the proponent claims it is. Defendant relies on the flash drive that counsel submitted with a letter advising that it contained the "requested bodycam video." If defendant bore the burden of proof at trial I would as a discretionary matter require a more robust certification of the authenticity of the video, most probably by an affidavit from Thomas that the video accurately depicted the events of May 30, 2021, since at trial I would expect Thomas himself to authenticate the video. But Thomas' counsel submits the video to point out the lack of evidence that it was Thomas who administered Narcan to Sechler. Because it is Sechler who bears the burden of proving that it was Thomas who administered Narcan, I will consider the video evidence without further extrinsic support. Under F.R.E. 904(b)(4), the "appearance, contents, substance, internal patterns, [and] other distinctive characteristics of the item" authenticate the video sufficiently to show that it is the recording of Thomas' body camera. When the internal indicia of date, place, and event depicted in the evidence themselves provide ample support that it is what it appears to be, the evidence is adequately authenticated. *See* United States v. Rembert, 863 F.2d 1023, 1028 (D.C. Cir. 1988)(recording from an ATM camera admitted).

  At the least, the video puts the burden on Sechler to come forward with evidence that Thomas administered Narcan that day: when the moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense by going beyond the pleadings, and by its own affidavits, depositions, answers to interrogatories, and admissions, "designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324. The nonmoving party cannot avoid summary judgment by claiming some metaphysical doubt as to the material facts. The test can be summarized simply:

> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

Matsushita, 475 U.S. at 586-87. In his motion for summary judgment, ECF no. 26, Thomas attached his police report from June 1, 2021, indicating that well before the beginning of litigation evidence existed that signaled that Grus, not Thomas, administered the Narcan. (Thomas' motion for summary judgment was filed before the running of the statute of limitations and despite this notice that he named the wrong defendant Sechler never moved to amend the complaint to substitute or add Grus as a defendant.) In response, Sechler filed a motion for discovery at ECF no. 28, stating in full:

> Now comes Plaintiff requesting entire vest camera footage from both Somerset Borough Police Department officers whom were present during the incident in the above captioned case. This will show them being told I was given an overdose of Narcan, excessive use of force from on location at the hotel and also the restraints at the hospital. The copy I submitted was edited.

Sechler's reference to the "copy I submitted" refers to a flash drive he submitted in February 2022, almost at the outset of the case and well before service of the complaint. It was the subject of a deficiency order at ECF no. 8, and I have not viewed its contents. After dealing with a matter involving the codefendant, at the beginning of August 2023 I responded to the motion for discovery and the motion for summary judgment by ordering that by the end of August the plaintiff submit any admissible evidence that Thomas administered the Narcan and the defendant submit "any body-camera footage that exists." ECF no. 34.

In response, Thomas submitted the flash drive at ECF no. 36. Thomas has not affirmatively stated that Grus did not have a body camera, but no other footage has been produced. Sechler submitted ECF no. 35, a one-page letter that asserts

> I believe the vest camera footage I submitted shows Officer Thomas administering Narcan & it's also heard from a medical professional saying he gave me, Thomas (did), an overdose. All of my claims can be verified with both officer's vest cams. Also there is an eyewitness who was there with me that night who can ID Thomas as the one giving Narcan. Also I was charged with a criminal case that night and Officer Thomas states in the affidavit that he is who administered Narcan. I will as soon as possible reach out to the public defender's office & see if they still have a copy of that affidavit & I can also try to reach the eyewitness Becky Hollick, & try to get her contact information.

Sechler's reference to "the vest camera footage I submitted" presumably is to the "copy I submitted [in February 2022 that] was edited." Sechler's implicit denial of the authenticity of a video recording submitted by Thomas' counsel is not enough to bar its use. If Sechler has an alternative video record or a credible story how the video record could be "edited" to its present form and how that differs from the copy that the Somerset Borough Police Department or defense counsel provided him no later than February

3

2022, he must submit it forthwith as part of a motion under Fed.R.Civ.P. 59 with an explanation for not producing it by August 31, 2023.

I viewed four sequential video clips from a body camera that from the time stamps run from 5:38 a.m. to 5:48 a.m., from 5:48 a.m. to 5:58 a.m., from 5:58 a.m. to 6:08 a.m., and from 6:08 a.m. to 6:13 a.m. The clips are consistent with events that Thomas described in his June 1, 2021 police report:

On May 30, 2021, officers David Thomas and Eric Grus arrive at a motel in Somerset at approximately 5:38 a.m. in response to a call of a drug overdose and encounter a woman identified as Becky Hollick. Hollick, inside the room with a cell phone in her hand, is upset because a man identified as Sechler is lying on his back on the floor of a motel room wearing shorts but no shirt, unconscious but not dead. Anyone who ever watched a police procedural movie or television show would identify the scene as a suspected drug overdose. After some questions back and forth ("is the blood from you or him?") with Hollick that satisfy the officers that this is in fact an overdose and that Hollick does not know Sechler's last name because she looks off camera to a woman later identified as Jenna Kelly for that information, one of the officers tells Jenna Kelly, who is hovering around the door to the room, to "go outside and let us deal with this." Thomas steps outside, leaving Grus and Hollick inside. Outside, Thomas interviews Kelly, who is understandably vague about how and why the three were at the motel. She does acknowledge that she and Sechler used to date and that she has a PFA against him. While this is going on two EMTs from an ambulance that has arrived on scene enter the room with a gurney. At approximately 5:44 a.m. the EMTs transport the still unconscious Sechler past Thomas and Kelly on the gurney to the ambulance.

A very short time later Thomas is called over to the ambulance by noise. The ending of the first clip and the bulk of the next twenty minutes of video show Sechler's agitation after having been revived by administration of Narcan. Sechler thrashes around on the gurney and makes noise but is clearly not oriented to his environment. There is an attempt to handcuff Sechler, and someone says there is "nothing to cuff him to." Eventually someone says: "cuff him to himself, it's better than nothing" and that is done. Thomas remains in the back of the ambulance during transport to UPMC Somerset, keeping a gloved hand on Sechler's forehead while Sechler thrashes around. At no point is anything remotely like excessive force used: Thomas' hands are in the position one would use to stabilize someone with a potential spine injury. There is blood from the back of Sechler's head on the blanket and as the clips go along there is blood in Sechler's mouth. Sechler's eyes are open and he makes various nonverbal noises like "ahaHahahaHa" and "ooowhooHoowho" while Thomas and others make reassuring and encouraging comments. Sechler grows slightly more alert as time goes on, and after about 5:55 a.m. responds to verbal commands with an occasional "okay," but he never reaches the point

where he appears to be in control of his actions. Sechler grinds his teeth throughout and continues to emit a stream of nonverbal noises like "ow" "whhoo" and "ahahaha."

At one point around 5:50 a.m. Sechler "jackknifes" and does what you would call a sit-up if it were done by a conscious person, and apparently gets his teeth on the upper inside of the left arm biceps muscle of an EMT identified as Dean Durst. The bite itself is not captured on camera. Shortly after being bitten, while Sechler continues to thrash around, Durst says "you're not supposed to wake ["them" or perhaps "him"] up with Narcan, this is why." It is not possible to say whether this is a medical opinion or just low-key humor in a tense situation.

Once at UPMC Somerset, a medical team transfers Sechler to a hospital bed, and the audio is mostly Sechler making noise in the foreground while medical personnel say calming things to Sechler interspersed with treatment instructions to each other. A male RN who is familiar with Sechler reminds Sechler that the RN previously administered doxycycline to Sechler and asks what drug, whether heroin or something else, Sechler used. At approximately 6:02 a.m. there is background discussion about Sechler being a "classic" meth user. When Sechler has been secured to his hospital bed and Thomas leaves the room to strip off his gloves and wash his hands, Durst shows Thomas where he was bitten through his jacket. Thomas apologizes to Durst for letting Sechler get free.

There is some discussion about whether Sechler should be charged for biting Durst, with Durst reluctant because in his opinion Sechler was completely unaware of what he was doing and an unidentified female RN arguing that unless he is charged Sechler will "just keep coming back to the ER." Thomas turns to Eric Grus in the course of this discussion and says "Eric, he bit him." Because the camera is not being aimed at the speakers and many of the speakers are wearing hospital masks it is not always possible to identify the speaker or the intended audience but in the course of all this Durst, apparently reflecting on Sechler's biting him, says "this is why you should give him one [dose of Narcan] and you gave him [two doses] back to back." This appears to be the basis for Sechler's entire suit: he believes that this indicates that instead of saving his life the person who administered Narcan injured him. Sechler filed his complaint with the allegation that that person was Thomas. The evidence shows Thomas could not have been the person who administered the Narcan.

It would not be possible to determine whether it was Grus or an EMT who administered Narcan from the video. Even the question whether Narcan was administered in the motel room and took effect a minute later or in the ambulance and took effect immediately cannot be definitively answered from the video. But it is clear that the Narcan was administered while Thomas was speaking to Jenna Kelly because in the first video clip the EMTs enter the room where Grus, Hollick, and Sechler are while

5

Thomas is speaking to Kelly. Shortly thereafter the EMTs wheel Sechler past Thomas still in an unconscious state, and Sechler revives and starts to make noise in the ambulance only seconds later. At that point Thomas is still speaking to Kelly. Thomas could not have interacted with Sechler, much less administered anything to Sechler, without being recorded doing so.

When there are opposing stories, one of which is blatantly contradicted by a video record, the video record presents the undisputed facts for purposes of ruling on a motion for summary judgment. Here there are not even opposing stories. There was an opposing allegation in the complaint, but at the summary judgment stage Sechler's lack of competence to personally say who administered the Narcan while he was unconscious is not capable of dispute. His other purported evidence is not in the record. Thomas' police report does not "admit" that Thomas administered Narcan, it states that Grus did. There is no contrary affidavit from Hollick or Kelly, nor contrary deposition testimony from Thomas or Grus. (And if Sechler had done discovery and obtained an affidavit from Hollick or Kelly that stated they saw Thomas administer Narcan it would have to be rejected after <u>Scott v. Harris</u>.) On this record, no rational jury could find for Sechler against Thomas.

DATE: September 6, 2023

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Eric K. Sechler
871 Wambaugh Hollow Road
Berlin, PA 15530